United States District Court
Southern District of Texas
**ENTERED**
March 14, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY JAMES SCHWEITZER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00273 |
| | § | |
| J.W. DAGLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me are Motions to Dismiss filed by County Defendants,[1] Healthcare Defendants,[2] Kathy White ("White"), and City Defendants[3] (collectively, "Defendants"), respectively. *See* Dkts. 74, 79, 80, 82. For the reasons discussed below, I recommend County Defendants' motion (Dkt. 74) be **GRANTED IN PART** and **DENIED IN PART**, and the remaining motions (Dkts. 79, 80, 82) be **GRANTED**.

---

[1] County Defendants include Galveston County Sheriff Henry Trochesset ("Trochesset"), Chief Deputy Dennis Macik ("Macik"), and Deputy Miguel Perez ("Perez").

[2] Healthcare Defendants include Boon-Chapman Health Administrators, Inc. ("Boon-Chapman") and Soluta Health, Inc. ("Soluta").

[3] City Defendants include the City of Galveston (the "City"), Chief of Police Douglas Balli ("Balli"), Assistant Chief of Police Andre Mitchell ("Mitchell"), Lieutenant Sean Migues ("Migues"), Detective Jeffrey Dagle ("Dagle"), Detective Thomas Murdock ("Murdock"), Detective Michelle Sollenberger ("Sollenberger"), Sergeant Brandon Bohnert ("Bohnert"), Sergeant Christopher McNeil ("McNeil"), Sergeant Charles Dodson III ("Dodson"), Sergeant Jack Doraty, Jr. ("Doraty"), Sergeant Derek Gaspard ("Gaspard"), Sergeant Ronald Varela ("Varela"), Sergeant Kenneth Weems ("Weems"), Officer Tristan Allen ("Allen"), Officer Steven Childs ("Childs"), Officer Jackson Krueger ("Krueger"), Officer Eugene McAvin ("McAvin"), Officer Elizabeth Moore ("Moore"), Officer Kristopher Pompa ("Pompa"), Officer Leroy Puga ("Puga"), Officer Brian Rawls ("Rawls"), Officer Jordan Reyes ("Reyes"), Officer Tyler TenEyck ("TenEyck"), Officer Andrew Vences ("Vences"), and Officer Zachary Williams ("Williams").

## BACKGROUND[4]

Plaintiff Timothy James Schweitzer ("Schweitzer"), representing himself, brings this lawsuit asserting claims against Defendants under 42 U.S.C. § 1983 for alleged constitutional violations over the course of approximately two years.

### A.   JULY 28, 2020 ARREST AND DETENTION

The first instance in which Schweitzer alleges his constitutional rights were violated occurred on July 28, 2020, when Dagle, a member of the City's police department, stopped Schweitzer for failing to use a turn signal. Dagle arrested Schweitzer, put Schweitzer in handcuffs, and placed Schweitzer in the back of Dagle's police vehicle. Schweitzer admitted failing to signal and Dagle issued Schweitzer a ticket, which Schweitzer signed. Section 543.005 of the Texas Transportation Code required Dagle to "promptly release" Schweitzer from custody. Rather than release Schweitzer, Dagle called Schweitzer's father: Jim Schweitzer, Presiding Judge of the Galveston Municipal Court ("Judge Schweitzer").[5] Judge Schweitzer arrived at the scene. Schweitzer alleges he then requested and was given permission to leave, but when he turned to walk away, he was stopped and "re-detained." Dkt. 72 at 18. Schweitzer says he "gave them the choice to let [him] go or arrest [him]." *Id.* "Sergeant Dagle decided to arrest [Schweitzer] after [Judge Schweitzer] gave [Dagle] a nod." *Id.* After deciding to arrest Schweitzer, Dagle allegedly "ripped up the ticket [Schweitzer] previously signed and arrested [Schweitzer] for the exact same offense." *Id.*

Dagle transported Schweitzer to the Galveston County jail. While being processed, Schweitzer asked for a supervisor, but was told that Dagle was the supervisor on duty. Shortly thereafter, an individual that Schweitzer understood to

---

[4] This section is based on the allegations contained in Schweitzer's Fourth Amended Complaint, which is the live pleading. *See* Dkt. 72.

[5] The Court takes judicial notice of the fact that the Honorable Jim Schweitzer is the Presiding Judge of the Galveston Municipal Court. *See* CITY OF GALVESTON, *Staff Directory*, https://www.galvestontx.gov/Directory.aspx?DID=17 (last visited Mar. 13, 2024); *see also* FED. R. EVID. 201.

be "the Chief of Police" came out to speak with Schweitzer. *Id.* at 19. Schweitzer told that individual about the ripped-up ticket and complained that Dagle should have released him, instead of arresting him. The individual asked Schweitzer if he wanted to make an official complaint and Schweitzer declined.

Schweitzer then received a mental health evaluation, in which he disclosed receiving threats from Dagle during a previous incident. Schweitzer alleges the mental health evaluation was conducted without privacy, and was not an accurate or thorough evaluation of his mental health. Schweitzer was then placed on suicide watch. He was made to strip naked and placed in a cell with no bed or toilet and only a small drain in the ground. Schweitzer claims he endured unsanitary conditions in the jail, including being exposed to COVID-19, feces on the walls, sewage on the floors, freezing cold temperatures, and large flies. Schweitzer contends these conditions constituted "torture" and "sexual assault." *Id.* at 23. Schweitzer was released from jail the following day.

At an unspecified later date, Schweitzer appeared in municipal court before Judge Schweitzer who gave him "time served." *Id.* Schweitzer claims Judge Schweitzer "participated in the traffic stop, gave permission for [Schweitzer's] arrest, helped write the police report[,] and then presided over [Schweitzer's] case after [he] was already punished without due process." *Id.*

**B.   DECEMBER 2020 VEHICLE IMPOUNDMENT**

In December 2020, Schweitzer parked a U-Haul and trailer outside a polling location on Election Day, intending to hang signs on it. Before Schweitzer could hang his signs, the police impounded the vehicles without asking Schweitzer to move them. Schweitzer claims he was "legally parked." *Id.* at 25.

**C.   INVESTIGATION INTO JULY 28, 2020 ARREST**

On February 5, 2021, Schweitzer "filed two independent complaints with the Galveston Police department" related to Dagle's July 28, 2020 arrest of Schweitzer and Schweitzer's subsequent detention in the Galveston County jail. *Id.* The City investigated Schweitzer's complaint. The investigation included a March 24, 2021

conference call between Schweitzer, the City Manager, City Attorney, and Chief of Police. On March 31, 2021, "the Chief of Police" allegedly called Schweitzer and apologized for Dagle's conduct during the July 28, 2020 arrest. *Id.* On April 21, 2021, Macik mailed a letter to Schweitzer stating his allegations against the jail had been deemed unfounded. "On May 27, 2021, Sergeant Andre Mitchell with the Office of Professional Standards sent [Schweitzer] a letter informing [him] that . . . the allegation against Sergeant Dagle [was] unfounded." *Id.* at 27.

**D.    APRIL 24, 2021 SEARCH, EMERGENCY DETENTION, AND ARREST**

On April 24, 2021, Galveston police officers executed a search warrant at Schweitzer's apartment. Law enforcement officials handcuffed Schweitzer and took him to the police department for questioning regarding allegations of harassment. Schweitzer alleges he requested an attorney upon arrival at the Galveston Police Department, but was instead immediately placed in another police vehicle and transported to a hospital in Houston. "According to the paperwork from the hospital," Schweitzer was "[brought in by the] Galveston County Sheriff's Office on an [emergency detention order] for [suicidal ideation/homicidal intent]." *Id.* at 26. Upon being released from the hospital, Schweitzer "was told to turn [him]self into the jail the next day." *Id.* He did so, spending four days in jail after being charged with criminal mischief and harassment. Schweitzer alleges the criminal mischief charge is the result of Vences falsifying a report. Specifically, Schweitzer alleges Vences falsely claimed the manager of Schweitzer's apartment complex wanted to press charges. Both charges were ultimately dismissed more than a year later.

**E.    MARCH 23, 2022 ARREST**

On March 23, 2022, Schweitzer was arrested for disorderly conduct for an "offensive gesture or display." *Id.* at 27. Schweitzer was holding signs outside the San Luis Hotel that stated "Fuck GPD." *Id.* Schweitzer claims his arrest was effectuated without a warrant or probable cause. Specifically, Schweitzer alleges "officers claimed a woman drove past and [his] sign hurt her feelings." *Id.*

Following his arrest, McAvin took Schweitzer's dog to an animal shelter, and his property was "destroyed/confiscated." *Id.* Schweitzer spent one night in jail before appearing in front of Judge Schweitzer again. Schweitzer claims to have "refused to attend anymore court dates unless . . . provided a different judge beforehand." *Id.* The charge was ultimately dismissed. Schweitzer alleges McNeil, Allen, Moore, McAvin, and an unknown officer and unknown commander were involved in this arrest. *See id.* at 13 (Defendant No. 33 is an unknown officer/commander).

### F.   MAY 20, 2022 DOG ATTACK

On May 20, 2022, Schweitzer and his dog were attacked by three other dogs at a dog park. Schweitzer was nervous the Galveston Police Department would retaliate against him if he reported the attack, so he did not report it. Someone from his apartment complex did report the attack though. Schweitzer alleges that McAvin left a note at his apartment stating, "the dog that bit you had rabies." *Id.* at 28. Before receiving treatment for rabies, Schweitzer learned from the Humane Society that the dogs did not have rabies.

### G.   MAY 28, 2022 WELFARE CHECK AND EMERGENCY DETENTION

On May 28, 2022, Galveston police officers conducted a welfare check at Schweitzer's apartment. Schweitzer was again taken to the hospital on an emergency detention order. Schweitzer was held at the hospital for four days. Schweitzer alleges he was not an imminent threat and the officers lied to the hospital. Schweitzer also alleges the officers illegally entered his apartment and took his personal property without a warrant while he was being transported to the hospital.

### H.   JULY 28, 2022 LAWSUIT AND EMERGENCY DETENTION

On July 28, 2022, Schweitzer filed this lawsuit. As Schweitzer was leaving the Galveston Federal Courthouse, he was detained and involuntarily committed to a hospital in Houston. Schweitzer contends he was not an imminent threat and the officer did not have a warrant. Schweitzer claims he was never informed why he was being detained.

## LEGAL STANDARD

A complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain detailed factual allegations, it "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that . . . raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. I am not bound to accept as true legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). I must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (quotation omitted). Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). "Liberal construction is afforded to *pro se* litigants to serve as a shield, in line with the 'congressional goal of assuring equality of consideration for all litigants' behind the federal *in forma pauperis* statute." *Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)). Pro se litigants, however, are not excused from complying with the Federal Rules of Civil Procedure. *See Carmouche*, 77 F.4th at 368 (noting that pro se complaints must still comply with Rule 8's notice pleading requirement).

## ANALYSIS

### A.   SCHWEITZER'S CLAIMS ARE NOT TIME-BARRED

County Defendants, Healthcare Defendants, and White assert that Schweitzer's claims are barred by the statute of limitations. *See* Dkt. 74 at 8 n.5; Dkt. 79 at 4; Dkt. 80 at 4.

"Because there is no federal statute of limitations for civil rights actions brought pursuant to 42 U.S.C. § 1983, a federal court borrows the forum state's general personal injury limitations period." *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). In Texas, the applicable limitations period is two years. *Id.* at 256–57 (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a)). Although Texas provides the limitations period, "federal law governs when a cause of action under § 1983 accrues." *Gartrell*, 981 F.2d at 257. "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

Schweitzer complains of constitutional violations spanning from July 28, 2020 through July 28, 2022. *See* Dkt. 72. On July 28, 2022, Schweitzer filed an application to proceed *in forma pauperis*, to which his complaint was attached. *See* Application to Proceed In Forma Pauperis, *Schweitzer v. Dagle*, No. 3:22-mc-00010 (S.D. Tex. Jul. 28, 2022), ECF No. 1. "For statute of limitations purposes, a complaint in an action in which leave to proceed *in forma pauperis* is requested is generally deemed to have been filed on the day the motion [to proceed *in forma*

*pauperis*] is received by the clerk." *Walter v. Ports Am.*, No. 4:09-cv-3663, 2011 WL 5415176, at *4 (S.D. Tex. Nov. 8, 2011) (collecting cases). Because Schweitzer's complaint was attached to his application to proceed *in forma pauperis*, the clerk received the complaint on July 28, 2022, exactly two years after the first alleged violation of Schweitzer's constitutional rights. Accordingly, Schweitzer's claims are timely.

### B. SCHWEITZER TIMELY EFFECTUATED SERVICE

County Defendants argue Schweitzer failed to timely effectuate service because seven months elapsed from the filing of Schweitzer's complaint until they were served. *See* Dkt. 74 at 8 n.5. To toll the Texas statute of limitations, "two requirements must generally be met within the period of limitation": (1) the complaint must be filed with the clerk, *and* (2) a summons, accompanied by a copy of plaintiff's complaint, "must be issued by the clerk and served upon the defendant by an authorized officer." *Curry v. Heard*, 819 F.2d 130, 131 (5th Cir. 1987). Under the Texas equitable doctrine of tolling, the plaintiff may satisfy this rule "by filing the petition within the period of limitation so long as the plaintiff approximates the rule's second requirement by using 'diligence in procuring the issuance and service of citation,' even though the citation is in fact first issued and served after the period of limitation." *Id.* at 132 (quoting *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex. 1970)).

From the time Schweitzer filed his complaint until December 2022, Schweitzer was "in either a mental hospital or jail." Dkt. 14 at 1. Upon release, Schweitzer immediately requested additional time to serve Defendants. *See id.* On January 6, 2023, I ordered Schweitzer "to serve all the defendants with summons by March 3, 2023." Dkt. 17 at 1. Schweitzer took steps towards doing that,[6] but he did not have the money to pay a process server to serve all the Defendants. So, on February 15, 2023—before the deadline I set for service had expired—Schweitzer

---

[6] Trochesset was served on March 2, 2023, in compliance with my January 6, 2023 Order.

requested the Clerk's office issue summonses to the Marshals for service. *See* Dkt. 22. On March 7, 2023, I issued an order, noting that the Marshals would serve the live pleading, free of charge, and requiring Schweitzer to come into the Galveston Federal Courthouse to fill out summons for each defendant by March 17, 2023. *See* Dkt. 27. As far as County Defendants are concerned, Schweitzer complied with my March 7, 2023 Order when summons for Macik and Perez were hand delivered to the U.S. Marshals on March 17, 2023. *See* Dkt. 31. Macik and Perez were ultimately served by the U.S. Marshals. *See* Dkts. 39, 42.

Schweitzer diligently pursued his rights. As soon as he was released from custody, he requested and received additional time to serve Defendants. It is true that I had to issue several orders to Schweitzer before all County Defendants were served, but Schweitzer timely complied with each of those orders to the best of his ability.[7] Accordingly, I recommend the court find the statute of limitations equitably tolled by Schweitzer's compliance with my orders regarding service.

## C. OFFICIAL-CAPACITY SUITS SHOULD BE DISMISSED AS REDUNDANT

"A claim against a municipal official in his or her official capacity is tantamount to a suit against the municipal entity." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 789 (W.D. Tex. 2016), *aff'd*, 891 F.3d 214 (5th Cir. 2018). "Thus, when a plaintiff asserts claims against both the municipal entity and a municipal official in his or her official capacity, the Court can dismiss the official

---

[7] The Notice to Pro Se Litigant states: "It is your responsibility to prepare and have one summons issued for each of the defendants named in your complaint." Dkt. 2 at 1. The record shows, however, that this notice was returned undeliverable on September 16, 2022. Schweitzer notified the court by letter of his incarceration and provided a new address on November 28, 2022. The Clerk's Office resent the Notice to Pro Se Litigant, but it was also returned undeliverable because Schweitzer was released between his first letter to the court and the Clerk's Office's mailing. Schweitzer again diligently notified the court of his new address on December 9, 2022, and moved for additional time to serve summonses. *See* Dkts. 12, 14. The record does not show, however, that the Clerk's Office attempted to resend the Notice of Pro Se Litigant. Accordingly, Schweitzer had no way of knowing that he needed to do anything other than request service by a United States Marshal. *See* FED. R. CIV. P. 4(c)(3).

capacity claim as 'redundant' to the municipal-entity claim." *Id.* (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010)).

Because Schweitzer has sued the City, I recommend Schweitzer's claims against all other City Defendants in their official capacities—Balli, Mitchell, Migues, Dagle, Murdock, Sollenberger, Bohnert, McNeil, Dodson, Doraty, Gaspard, Varela, Weems, Allen, Childs, Krueger, McAvin, Moore, Pompa, Puga, Rawls, Reyes, TenEyck, Vences, Williams, "Unknown Commander" (Defendant No. 21), and "Unknown Officer" (Defendant No. 33)—be dismissed as redundant.

Schweitzer has also sued, but not served, the former Chief of the Galveston Police Department, Vernon Hale ("Hale"), in his official capacity only. *See* Dkt. 72 at 5. Because Schweitzer has sued the City, I recommend the suit against Hale be dismissed as redundant. Because the suit against Hale is redundant, I need not address the fact that Hale has yet to be served. *See* Dkt. 40.

## D.   QUALIFIED IMMUNITY

County Defendants and the individual City Defendants argue they are entitled to qualified immunity. *See* Dkt. 74 at 30; Dkt. 82 at 36. "Qualified immunity shields a government official from liability based on his performance of discretionary functions." *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (quotation omitted). To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quotation omitted). "A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* (quotation omitted). In determining whether County Defendants and individual City Defendants are entitled to qualified immunity, I must consider each Defendant's actions separately. *See Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007). For efficiency's sake, however, I will group defendants where my analysis as to why defendants are

entitled to qualified immunity is equally applicable to the group. I will address defendants as they appear, chronologically, in the Fourth Amended Complaint.

### 1. *Dagle*

Schweitzer alleges Dagle's July 28, 2020 arrest of Schweitzer for failing to signal was (1) a violation of Schweitzer's Fourth Amendment rights against unlawful search and seizure, and (2) an "[u]nlawful arrest based on the A-typical arrest exception," which Schweitzer alleges infringed on his First Amendment right to free speech. Dkt. 72 at 30.

Schweitzer's Fourth Amendment claim is dead on arrival because Schweitzer agrees he was "guilty" of failing to signal and "took full responsibility for [his] actions." *Id.* at 18. "There is no dispute that Officer [Dagle] had probable cause to believe that [Schweitzer] had committed a crime in his presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Schweitzer "admits" he failed to signal, thus "[Dagle] was accordingly authorized (not required, but authorized) to make a custodial arrest." *Id.* Schweitzer's retaliatory arrest claim, however, requires much closer analysis.

To establish a First Amendment retaliation claim against Dagle, Schweitzer must show that (1) he was "engaged in constitutionally protected activity"; (2) Dagle's actions caused Schweitzer "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Dagle's "adverse actions were substantially motivated against [Schweitzer's] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "[A] 'plaintiff pressing a retaliatory arrest claim' based on speech protected by the First Amendment generally 'must plead and prove the absence of probable cause for the arrest.'" *Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019)). There is one exception to the rule: "[A] plaintiff asserting a retaliatory arrest claim does ***not*** have to establish the absence of probable cause 'when [the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the

same sort of protected speech had not been.'" *Grisham*, 93 F.4th at 909 (emphasis added) (quoting *Nieves*, 139 S. Ct. at 1727). This exception stems from the principle that "'where officers have probable cause to make arrests[,]' they may not disproportionately or unfairly 'exercise their discretion not to do so.'" *Grisham*, 93 F.4th at 910 (quoting *Nieves*, 139 S. Ct. at 1727).

It is undisputed that Dagle had probable cause to arrest Schweitzer. But Schweitzer alleges Dagle unconstitutionally exercised this discretion when he ripped up the ticket Schweitzer had already signed and arrested him for the same offense only *after* Schweitzer told Dagle: "let me go or arrest me." Dkt. 72 at 18. Schweitzer alleges he "was the only person arrested for failing to use [his] turn signal while nobody else in the community was even being pulled over [for] such a small violation." *Id.* at 30. Schweitzer also points to Galveston Police COVID-19 pandemic protocols that he alleges discouraged arrests for low-level offenses. Taking Schweitzer's allegations as true, which I must at this stage, Schweitzer adequately alleges the first and third prongs of a retaliatory arrest claim, and that his arrest falls within *Nieves*'s atypical arrest exception.

Schweitzer's demand to be released or arrested was unquestionably protected speech. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63. Thus, Schweitzer satisfies the first prong of a retaliation claim: he was engaged in constitutionally protected activity.

As to the third prong, Schweitzer has more than demonstrated that Dagle's actions were motivated against Schweitzer's speech. Remember, Dagle had already ticketed Schweitzer for failing to signal. *See* Dkt. 72 at 18. The Texas Transportation Code requires arresting officers to "promptly release the person from custody" once they "make a written promise to appear in court by signing the

written notice prepared by the arresting officer." TEX. TRANSP. CODE ANN. § 543.005. Dagle should have promptly released Schweitzer once Schweitzer signed the ticket. Dagle ripped the ticket up only after Schweitzer exercised his First Amendment right to demand release if he was not going to be arrested. That is exactly the situation contemplated by *Nieves*. Moreover, Dagle's initial ticketing of Schweitzer lends credence to Schweitzer's allegation "that the Galveston police department was not making arrests for Class 'C' Misdemeanors." Dkt. 72 at 30. In other words, Schweitzer has adequately alleged facts showing that otherwise similarly situated individuals who did not challenge Dagle were not arrested.

Alas, Schweitzer's claim fails as to the second prong: injury. Any curtailing of free speech, even if the effect is "small," satisfies the injury requirement of the second prong. *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017) ("The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." (quotation omitted)). But Schweitzer must still "demonstrate that he reduced or changed his exercise of free speech." *Id*. This Schweitzer cannot do.

Schweitzer alleges he asked to speak to a supervising officer after arriving at the jail, and that he explained everything that had transpired with Dagle to the Chief of Police "in front of everyone," which presumably included Dagle. *See* Dkt. 72 at 19. In other words, Schweitzer "persisted in exposing and challenging [Dagle]." *Keenan*, 290 F.3d at 259. Indeed, Schweitzer's subsequent arrests were a result of his speaking out about the July 28, 2020 arrest. *See* Dkt. 72 at 24–25. Because Schweitzer has not alleged that he "curtailed [his] protected speech activities in response to [Dagle's] actions," he cannot satisfy the second prong of his retaliatory arrest claim. *Keenan*, 290 F.3d at 260. Thus, Schweitzer fails to state a claim against Dagle, or to overcome Dagle's qualified immunity. I recommend Schweitzer's claims against Dagle in his individual capacity be dismissed.

### 2.   *Perez Is Not Sued in His Individual Capacity*

Schweitzer has sued Perez—a Galveston County Sheriff's deputy—in his official capacity only. *See* Dkt. 72 at 4. Schweitzer encountered Perez while detained at the Galveston County jail on July 28, 2020. *See id.* at 21–22. "[U]nder Supreme Court case law, the personal defense of qualified immunity does not apply to official-capacity claims." *Stallworth v. Slaughter*, 436 F. App'x 337, 340 (5th Cir. 2011). Because Perez is not sued in his individual capacity, he is not personally liable, even if Schweitzer states a claim against him. *See Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("[A] § 1983 suit naming defendants only in their 'official capacity' does not involve personal liability to the individual defendant."). Accordingly, I will save my analysis of Schweitzer's claims against Perez for later.

### 3.   *Trochesset*

Schweitzer mentions Trochesset only once in the operative pleading: "I overheard several [employees on duty] whispering about Sheriff Trochesset being in quarantine." Dkt. 72 at 20. Trochesset is not personally or directly implicated in any of the alleged constitutional violations. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quotation omitted). Schweitzer has done neither. Because Schweitzer fails to state a claim against Trochesset, Schweitzer necessarily cannot overcome Trochesset's qualified immunity. Accordingly, I recommend Schweitzer's claims against Trochesset in his individual capacity be dismissed.

### 4.   *Balli*

Schweitzer does not name Balli in the operative pleading. Schweitzer does mention the "Chief of Police" (*see* Dkt. 72 at 19, 25), which is Balli's current title. *See* Dkt. 82 at 1 n.1; *see* Galveston, *Administration, Chief of Police Doug Balli*,

https://www.galvestontx.gov/416/Administration (last visited Mar. 13, 2024). Schweitzer's allegations, however, concern the Chief of Police on July 28, 2020, and March 2021. *See* Dkt. 72 at 19, 25. The Chief of Police on those dates was Hale, not Balli. *See* Katie Mettler, *Galveston, Tex., chief Vernon Hale III tapped to be Prince George's police assistant chief*, WASH. POST (Oct. 14, 2021, 3:34 PM), https://www.washingtonpost.com/local/public-safety/prince-georges-assistant-chief-vernon-hale/2021/10/14/7a149e7a-2cfc-11ec-8ef6-3ca8fe943a92_story.html (last visited Mar. 13, 2024). Thus, Schweitzer fails to state a claim against Balli, and fails to overcome Balli's qualified immunity. *See Arnold*, 979 F.3d at 267. Accordingly, I recommend Schweitzer's claims against Balli in his individual capacity be dismissed.

### 5.    *Macik*

Schweitzer alleges that on April 21, 2021, "Macik mailed a letter informing [Schweitzer] that [his] allegations against the jail have been deemed unfounded." Dkt. 72 at 25. Schweitzer's Fourth Amended Complaint contains no other direct allegation or facts naming or identifying Macik. This allegation fails to state a claim against Macik, and fails to overcome Macik's qualified immunity. *See Arnold*, 979 F.3d at 267. I recommend Schweitzer's claims against Macik in his individual capacity be dismissed.

### 6.    *Sollenberger*

Schweitzer alleges:

> I was charged with criminal mischief when Officer Vences falsified a report and claimed the manager of my apartment wanted to press charges. He never spoke to her and there was no crime. I never damaged anyone else's property or inconvenienced them. Officer Vences was not an employee of the apartment complex and both he and detective Sollenberger chose to falsely . . . create a victim and label her as a resident in order to enhance the charge.

Dkt. 72 at 26. City Defendants have attached to their motion to dismiss an Incident/Investigation Report relating to the April 24, 2021 execution of the search warrant at Schweitzer's apartment. *See* Dkt. 82-3. Schweitzer has not objected to

this report. Moreover, because Schweitzer references this report in his Fourth Amended Complaint, and because it is central to his claim that "Galveston Police have a pattern and custom of filing false . . . reports regarding investigations and arrests" (Dkt. 72 at 31), I can consider it without converting City Defendants' Motion to Dismiss into a motion for summary judgment. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) ("[T]he court may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." (quotation omitted)).

As an initial matter, I note that the Incident/Investigation report was created and signed by Sollenberger, not Vences. *See* Dkt. 82-3. Additionally, the reference to "resident" on the Incident/Investigation Report—which appears adjacent to a field for "Military Branch/Status"—is clearly a reference to whether the victim is a resident of some larger geographical area, like Galveston or the United States. *Id.* at 2. In other words, the Incident/Investigation Report that Sollenberger created reflects nothing regarding whether the manager was a resident of the apartment complex. Regardless, there is no "enhancement" for a charge of criminal mischief based on the residency status of an alleged victim—criminal mischief is a property crime and the property owner's residency is irrelevant. *See* TEX. PEN. CODE ANN. § 28.03. Thus, Schweitzer's allegation that Sollenberger falsely labeled the manager as a resident—true or not—is irrelevant.

Schweitzer's allegation that Vences never spoke with the manager appears to be true. Likewise, it does not appear that Sollenberger spoke to the manager. What the Incident/Investigation Report shows, however, is that "Officer McCormack of the Galveston Police Department . . . had been in contact with . . . the apartment complex manager." Dkt. 82-3 at 6. "[The manager] requested that if officers were able to verify . . . the damage to the apartment . . ., she wanted to file criminal charges against Timothy Schweitzer." *Id.* Schweitzer was in possession of this Incident/Investigation Report for two months before filing his response, yet he does not contest either of these statements as false. In

fact, in his response to City Defendants' Motion to Dismiss, Schweitzer appears to have abandoned his claim that his criminal mischief arrest was the result of a falsified report. *See* Dkt. 92 at 5 (requesting leave to amend only as to the July 28, 2020 arrest and the March 23, 2022 arrest). Because Schweitzer makes no other allegations against Sollenberger, Schweitzer fails to state a claim against Sollenberger, and fails to overcome Sollenberger's qualified immunity. *See Arnold*, 979 F.3d at 267. Accordingly, I recommend Schweitzer's claims against Sollenberger in her individual capacity be dismissed.

### 7. *Vences*

For the same reason discussed in the immediately preceding section, Schweitzer fails to state a claim against Vences regarding Schweitzer's arrest for criminal mischief. Schweitzer's only other allegation against Vences is a group pleading in which Schweitzer lumps Vences in as one of the officers involved in Schweitzer's May 28, 2022 emergency detention. *See* Dkt. 72 at 28–29. Group pleading is insufficient to overcome qualified immunity. *See Armstrong v. Ashley*, 60 F.4th 262, 274 (5th Cir. 2023) ("Armstrong's allegation . . . suffers from the distinct problem of group pleading: she simply faults the eight Law Enforcement Defendants as a group without factual material suggesting that any particular defendant suppressed evidence."). Group pleading is also insufficient to state a § 1983 claim. *See id.* at 274–75 (rejecting group pleading as sufficient to state a § 1983 claim). Because Schweitzer makes no other allegations regarding Vences, Schweitzer fails to state a claim against Vences or to overcome Vences's qualified immunity. I recommend Schweitzer's claims against Vences in his individual capacity be dismissed.

### 8. *Mitchell*

Schweitzer alleges Mitchell "sent a letter [on May 27, 2021,] informing [Schweitzer] that the evidence deemed the allegation against Sergeant Dagle unfounded." Dkt. 72 at 27. Schweitzer makes no other allegations against Mitchell. Schweitzer fails to state a claim against Mitchell, and fails to overcome Mitchell's

qualified immunity. *See Arnold*, 979 F.3d at 267. Accordingly, I recommend Schweitzer's claims against Mitchell in his individual capacity be dismissed.

### 9.    McNeil, Allen, and Moore

Schweitzer's sole allegation against McNeil, Allen, and Moore is that they were involved in Schweitzer's disorderly conduct arrest on March 23, 2022. *See* Dkt. 72 at 27.

To be clear, Schweitzer has a constitutional right to hold out in public a sign that says "Fuck GPD." *Id.* "Criticism of the police, profane or otherwise, is not a crime." *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001). Federal courts "have routinely protected the use of profanity when unaccompanied by other conduct that could be construed as disorderly." *Wood v. Eubanks*, 25 F.4th 414, 423 (6th Cir. 2022) (reversing district court's grant of qualified immunity from a First Amendment retaliation claim for a disorderly conduct arrest). "[N]o reasonable officer could have believed that he could arrest [Schweitzer] solely because of the words he used . . ., which constituted neither 'fighting words' punishable under the First Amendment nor disorderly conduct under [Texas] law." *Brooks v. City of W. Point*, 639 F. App'x. 986, 989 (5th Cir. 2016).

It is true that "[a]n ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect." *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001). But that is not the case here. A motorist's passing observation of a sign that says "Fuck GPD" cannot, as a matter of constitutional law, constitute probable cause for a disorderly conduct arrest just because the motorist "was offended by the sign." Dkt. 82 at 31. Some "other conduct" is required. *Wood*, 25 F.4th at 423. Absent some other conduct, the motorist "could effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen v. California*, 403 U.S. 15, 21 (1971) (reversing breach of peace conviction against defendant who walked through a courthouse wearing a jacket bearing the words "Fuck the Draft"). City Defendants' arguments to the contrary offend the "constitutional right of free

expression [that] is powerful medicine in a society as diverse and populous as ours." *Id.* at 24.

Alas, despite knowing at least some of the officers names, Schweitzer does not identify who arrested him or how the other officers were involved. His sole allegation is this conclusory statement: "The officers involved were C.L. McNeil, T. Allen, E. Moore, E.E. McAvin, an unknown officer and an unknown commander." *Id.* Group pleading is simply insufficient to state a claim or to overcome qualified immunity. *See Armstrong*, 60 F.4th at 274–75. Thus, I recommend Schweitzer's claims against McNeil, Allen, and Moore in their individual capacities be dismissed.

### 10.   *McAvin*

Schweitzer alleges McAvin took his dog to an animal shelter when Schweitzer was arrested on March 23, 2022. *See* Dkt. 72 at 28. Schweitzer also alleges McAvin left a note at Schweitzer's apartment on May 20, 2022, which falsely stated "the dog that bit you had rabies." *Id.* Even if true, these allegations—individually or in combination—do not implicate Schweitzer's constitutional rights. Finally, Schweitzer alleges McAvin was "involved" in Schweitzer's March 23, 2022 disorderly conduct arrest and the March 28, 2022 emergency detention. *See id.* at 27–29. Group pleading is insufficient to state a claim or to overcome qualified immunity. *See Armstrong*, 60 F.4th at 274–75. Because Schweitzer makes no other allegations regarding McAvin, Schweitzer fails to state a claim against McAvin or to overcome McAvin's qualified immunity. I recommend Schweitzer's claims against McAvin in his individual capacity be dismissed.

### 11.   *TenEyck, Varela, Williams, Pompa, Krueger, Reyes, Dodson, and "Unknown Commander" (Defendant No. 21)*

Schweitzer names TenEyck, Varela, Williams, Pompa, Krueger, Reyes, Dodson, and "Unknown Commander" (Defendant No. 21) in their individual capacities. He fails, however, to articulate any facts or particularized allegations concerning them beyond alleging they were involved in the events stemming from

the May 28, 2022 welfare check and subsequent emergency detention. *See* Dkt. 72 at 28–29. Group pleading is insufficient to state a claim or to overcome qualified immunity. *See Armstrong*, 60 F.4th at 274–75. Thus, I recommend Schweitzer's claims against TenEyck, Varela, Williams, Pompa, Krueger, Reyes, Dodson, and "Unknown Commander" (Defendant No. 21) in their individual capacities be dismissed.

### 12.   *Migues, Childs, Doraty, and Puga*

Schweitzer's sole allegation against Migues, Childs, Doraty, and Puga is that all four were involved in Schweitzer being "involuntarily committed to the hospital" without a warrant and without an imminent threat of harm on July 28, 2022. Dkt. 72 at 29. This lone group allegation is insufficient to state a claim or to overcome qualified immunity. *See Armstrong*, 60 F.4th at 274–75. Thus, I recommend Schweitzer's claims against Migues, Childs, Doraty, and Puga in their individual capacities be dismissed.

### 13.   *Bohnert, Gaspard, Murdock, Rawls, and Weems*

Schweitzer alleges no facts with respect to Bohnert, Gaspard, Murdock, Rawls, or Weems, who are not even named in the Fourth Amended Complaint other than being listed on the initial pages as a named defendant. If group pleading is insufficient to state a claim, simply naming a group of defendants is even more insufficient. *See Arnold*, 979 F.3d at 267. Thus, I recommend Schweitzer's claims against Bohnert, Gaspard, Murdock, Rawls, and Weems in their individual capacities be dismissed.

### E.   HEALTHCARE DEFENDANTS AND WHITE

Healthcare Defendants and White assert, in virtually identical motions by the same counsel, that Schweitzer fails to state a § 1983 claim against them. I agree. To start, Healthcare Defendants and White are not actually mentioned in the operative pleading. This, on its own, is an independent and sufficient reason why Schweitzer fails to state a claim. Yet, all three appear to accept that they are the

medical providers to which Schweitzer refers when he complains about the medical care he received during his July 28, 2020 arrest. *See* Dkt. 79 at 5; Dkt. 80 at 5.

"For claims related to the medical treatment of a pretrial detainee, this court will find a constitutional violation where an officer: (1) subjectively knew of a substantial risk of serious harm to the detainee; and (2) responded to that risk with 'deliberate indifference.'" *Ford v. Anderson Cnty.*, 90 F.4th 736, 752 (5th Cir. 2024) (quotation omitted). Deliberate indifference is "an extremely high standard to meet," but it can be shown if a jail official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quotations omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). If I find "that one of the components of the test is not met, [I] need not address the other component." *Desroche v. Strain*, 507 F. Supp. 2d 571, 582 (E.D. La. 2007).

I do not reach the first prong of this test, because Schweitzer has not alleged anything close to deliberate indifference. Schweitzer alleges Healthcare Defendants and White rendered inadequate medical care on July 28, 2020 by not providing a thorough and accurate mental health evaluation, and not allowing for privacy and an unbiased evaluation. *See* Dkt. 72 at 20. Specifically, Schweitzer alleges "[d]eliberate [i]ndifference to a substantial risk of harm due to an active outbreak of COVID in the jail at the time when there was limited availability for testing and a vaccine was still far from reality." *Id.* at 30.[8]

A rushed, biased, or even incorrect mental health evaluation is, at best, negligence or medical malpractice, not deliberate indifference. *See, e.g.*, *Gobert*,

---

[8] Schweitzer also alleges deliberate indifference due "to the conditions of the holding cell." *Id.* But there is no allegation that Healthcare Defendants or White controlled the conditions of the holding cell at the Galveston County jail.

463 at 350 n.34 ("[F]ailure to diagnose, alone, does not constitute deliberate indifference."). Failure to afford Schweitzer privacy does not "evince a wanton disregard for any serious medical needs." *Ford*, 90 F.4th at 752 (quotation omitted). As for the risk of contracting disease, Schweitzer makes no allegations—beyond intimating that he should have never been arrested in the first place, which is not something Healthcare Defendants or White could control—about what actions Healthcare Defendants or White took or should have taken to address the risk of disease. Again, Schweitzer does not actually mention Healthcare Defendants or White in the operative pleading.

Schweitzer did not even respond to Healthcare Defendants or White's motions to dismiss. Schweitzer responded only to City Defendants' Motion to Dismiss, and only to the extent it concerned Dagle's July 28, 2020 arrest of Schweitzer, and the March 23, 2022 disorderly conduct arrest. These are the only two claims Schweitzer appears committed to preserving. *See* Dkt. 92 at 5 (requesting "leave to amend or refile []specifically for the two claims above"). Accordingly, I recommend Healthcare Defendants' and White's motions to dismiss be granted and Schweitzer's § 1983 claims against them dismissed.

\* \* \*

The remaining defendants are the municipal entities: County Defendants in their official capacities, which is essentially a suit against Galveston County, and the City. I will address each in turn.

## F.   GALVESTON COUNTY[9]

Schweitzer advances 26 "claims" in the Fourth Amended Complaint. *See* Dkt. 72 at 30–33. Yet, he makes no attempt to delineate which defendant(s) he

---

[9] It is "immaterial" that Galveston County has not been served as a defendant, despite being named in Schweitzer's Fourth Amended Complaint. *See Perkins v. Panola Cnty. Bd. of Supervisors*, No. 3:23-cv-00091, 2024 WL 19952, at *5 (N.D. Miss. Jan. 2, 2024) ("Indeed, it is well established that since 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity,' it is irrelevant whether the plaintiff brings suit against a county official in his official capacity or against the county itself." (*quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

seeks to hold responsible for each claim. Certain claims are obviously specific to individual defendants or to only one municipal defendant. *See, e.g.*, *id.* at 31 ("Galveston Police have a pattern and practice of failing to ensure accurate and timely reports from subordinates."); *id.* at 32 ("Sergeant Dagle was reprimanded by [Texas Commissioner on Law Enforcement] for failing to complete his continuing education requirements."). Other "claims" fail to identify a violation of any law, much less state a claim. For example, Schweitzer's claim that "[b]oth the City and County of Galveston refused to implement necessary and mandatory changes (for years) after conducting and paying for a third[-]party audit and legal assessment of the entire Galveston Legal System" is devoid of any factual enhancements that would indicate what law is supposedly being violated and how. *Id.* at 31. Schweitzer's only allegations that are fairly attributable to the County concern the conditions at the Galveston County jail, and the Galveston County Sheriff's office's role in executing emergency detentions. I will address each in turn.

### 1.   *Galveston County Jail Conditions*

Schweitzer alleges Galveston County deputies—including Perez—confined him, naked, in a "freezing" cell with a clogged drain and feces "all over the room." Dkt. 72 at 21–22. For the same reasons, stated above, that Schweitzer does not state a claim against Trochesset or Macik in their individual capacities, he does not state a claim against them in their official capacities. Perez is a different story. Schweitzer alleges he directly questioned Perez regarding the conditions of his confinement while he was "completely naked" in the allegedly freezing cell, which was covered in feces and without a working toilet. *Id.* at 21. Thus, if Schweitzer states a constitutional violation against Perez in Perez's official capacity, then Schweitzer states a claim against Galveston County.

Roughly three months after Schweitzer's detention in the Galveston County jail, the United States Supreme Court held that an inmate's conditions of confinement violated his Eighth Amendment right against cruel and unusual punishment where the inmate was confined, naked, "in a pair of shockingly

unsanitary cells." *Taylor v. Riojas*, 592 U.S. 7, 7 (2020).[10] "The first cell was covered, nearly floor to ceiling, in massive amounts of feces," while the second cell was "frigidly cold" and "equipped with only a clogged drain in the floor to dispose of bodily wastes." *Id.* at 7–8. Taylor was confined to the first cell for four days, and the second cell "for over 24 hours." *Id.* at 8. In reversing the Fifth Circuit's determination that "the law wasn't clearly established that prisoners couldn't be housed in cells teeming with human waste for only six days," the Supreme Court held that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." *Id.* at 8–9 (cleaned up).

The alleged conditions of Schweitzer's confinement at the Galveston County jail are strikingly similar to the conditions the Supreme Court found unconstitutional in *Taylor*. In fact, the only difference between the conditions in *Taylor* and the conditions Schweitzer alleges appears to be the duration of Schweitzer's confinement.[11] Schweitzer claims not to have eaten, drank, or relieved himself at all during his detention, and he references his behavior at the Galveston County jail "on that day," suggesting he was confined for roughly a 24-hour period. *See* Dkt. 72 at 21. So, the question becomes whether being held naked—without so much as an anti-suicide or suicide prevention blanket—in a freezing, feces covered cell without a flushing toilet for *only* 24 hours is "antithetical to human dignity." *Hope v. Pelzer*, 536 U.S. 730, 745 (2002). Taking Schweitzer's allegations as true—as I must—the conditions of his confinement at the Galveston County jail obviously

---

[10] The Supreme Court has held that pretrial detainees, who have not been convicted of any crime and thus should not be punished at all, "retain *at least* those constitutional rights that . . . are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (emphasis added). In other words, precedent regarding an Eighth Amendment conditions of confinement claim applies with full force to a Fourteenth Amendment conditions of confinement claim, if not more.

[11] As in *Taylor*, nothing suggests "the conditions of [Schweitzer]'s confinement were compelled by necessity or exigency." *Taylor*, 592 U.S. at 9.

"offended the Constitution." *Taylor*, 592 U.S. at 9. The cases County Defendants cite to the contrary, much like the cases relied upon by the Fifth Circuit in *Taylor*, are "too dissimilar." *Id.* n.2.

For example, the County cites *Brunet v. Warden Catahoula Correctional Center*, No. 1:21-cv-1968, 2021 WL 5412293 (W.D. La. Sep. 23, 2021), for the proposition that "temporary conditions, such as 3-4 days in jail with no running water, electricity, or proper ventilation, and with feces piling up in the toilet, and mud and muddy water on the floors, is not a general or intended condition of confinement, nor does [the] same constitute actionable punishment." Dkt. 74 at 27. But the County overlooks (1) that the conditions of which Brunet complained "arose due to a storm and emergency evacuation," and (2) at no point did Brunet allege that he was *naked* (and freezing) while exposed to human waste. *Brunet*, 2021 WL 5412293, at \*3. Tellingly, none of the nine cases the County cites for the idea that "*temporary* exposure to some conditions of confinement claims fail," say anything about whether it is constitutional for a detainee to face even a temporary sanitation problem *while naked and freezing*. Dkt. 74 at 27–28. In fact, one Fifth Circuit case cited observes that "conditions of confinement may be aggregated to rise to the level of a constitutional violation when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such a food, warmth, or exercise," like "where a prisoner complained of a low cell temperature at night combined with a failure to issue blankets." *Hope v. Harris*, 861 F. App'x 571, 582–83 (5th Cir. 2021) (quotations omitted). Here, Schweitzer has alleged a trifecta of violations: unsanitary conditions, a freezing cell, and forced nakedness.

The "wrong of which [Schweitzer] complains is a general condition of confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). If disciplinary segregation, 22-23-hour confinement, and placing a mattress on the floor are conditions of confinement, then so, too, is a freezing cell covered in feces with no mattress and no working toilet. *See id.* n.2 (collecting conditions-of-confinement

cases). "In such cases, the reasonable relationship test of *Bell v. Wolfish*, 441 U.S. 520 (1979), is apposite [to determine municipal liability], as we may safely assume, by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation." *Id.* As such, "a constitutional violation exists only if we then find that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." *Id.*

Setting aside Schweitzer's contention that he was not suicidal, I will assume that confining Schweitzer naked without a blanket was reasonably related to the legitimate, non-punitive governmental objective of protecting detainees who may have suicidal ideations.[12] Even so, there is no conceivable legitimate, non-punitive governmental objective that relates to a freezing cell—in Texas, in July—covered in feces and without a working toilet. And there is certainly no legitimate, non-punitive governmental objective that relates to keeping a detainee in a freezing, feces-covered cell without a working toilet or blanket *while naked*. Thus, at this very early stage, taking Schweitzer's allegations as true, I find that he has alleged enough facts to support a plausible condition of confinement claim.[13]

---

[12] "Courts who have considered similar claims brought by prisoners have concluded that there is no constitutional right to avoid being placed on suicide watch." *Hunter v. Williams*, No. 3:13-cv-00592, 2013 WL 3467097, at *2 (M.D. Tenn. July 10, 2013) (collecting cases and finding plaintiff's "allegations that the defendants placed him on suicide watch for a period of two days after finding two Tylenol pills in his cell do not rise to the level of a due process or Eighth Amendment violation").

[13] In a footnote, County Defendants contend, "[t]o the extent the same applies here, the PLRA (Prison Litigation Reform Act) requires a physical injury as a prerequisite to recovery for mental or emotional injury." Dkt. 74 at 19 n.8 (citing 42 U.S.C. § 1997e). The PLRA applies to "prisoners," which means "any person incarcerated or detained" at the time the complaint is filed. 42 U.S.C. § 1997e(h). "When he filed this complaint, [Schweitzer] was neither incarcerated nor detained in any jail, prison, or correctional facility. The PLRA unambiguously applies to only those suits filed by prisoners. [Schweitzer] was not a prisoner when he filed the instant case, and the PLRA therefore does not apply to his case." *Doe By & Through Doe v. Washington Cnty.*, 150 F.3d 920, 924 (8th Cir. 1998). As such, the PLRA's physical injury requirement does not apply.

### 2.   *Emergency Detention*

Schweitzer alleges "Galveston Police have a pattern of using the Galveston County Sheriff's Department to unlawfully and involuntarily commit 'certain' people against their will and without any justification, warrant, or imminent threat whatsoever." Dkt. 72 at 32. To start, I note that Texas law expressly provides: "A peace officer, ***without a warrant***, may take a person into custody . . . if the officer . . . has reason to believe and does believe that: (A) the person [has a] mental illness; and (B) because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained." TEX. HEALTH & SAFETY CODE ANN. § 573.001(a)(1) (emphasis added). That same law, however, also requires that the officer "believes that there is not sufficient time to obtain a warrant before taking the person into custody." *Id.* § 573.001(a)(2).

The only facts Schweitzer alleges pertaining to this claim against the County are from the April 24, 2021 execution of a search warrant at Schweitzer's apartment, and Schweitzer's subsequent emergency detention at a "hospital in Houston." Dkt. 72 at 26. Specifically, Schweitzer alleges "paperwork from the hospital" states: "Timothy Schweitzer is a 34 year old male with no reported [prior mental history] or [prior psychiatric history brought in by] Galveston County Sheriff's Office on an [emergency detention order] for [suicidal intent/homicidal intent]." *Id.* Schweitzer argues law enforcement "had ample time to get a warrant in order to commit me especially because they had already obtained both a search warrant and supposedly an arrest warrant that same day. There were no new circumstances that would have justified their behavior." *Id.*

Taking these allegations as true, Schweitzer cannot establish a "pattern" as to Galveston County because his only allegations against the County concern a single incident. Moreover, no County Defendant is alleged to have been involved in the April 24, 2021 emergency detention. Schweitzer "did not even bother to name a 'John Doe' in [the] place" of the Galveston County Sheriff's personnel who detained him. *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021). Thus,

Schweitzer has not stated a claim against Galveston County for whatever role an unknown number of its unidentified personnel may have played in Schweitzer's April 24, 2021 emergency detention.

## G.   CITY OF GALVESTON

### 1.   Monell *Liability*

"In *Monell* . . ., the Supreme Court held that Congress intended § 1983 to apply to local government entities as well as to persons." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994). The Fifth Circuit has explained the contours of *Monell* liability:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom. *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; ***isolated unconstitutional actions by municipal employees will almost never trigger liability***. The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (emphasis added) (cleaned up).

Official policy exists in two forms. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Second, an official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at

579). Proof of a custom or policy can be shown by "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or where "a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* "Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy." *Paz v. Weir*, 137 F. Supp. 2d 782, 799 (S.D. Tex. 2001). Because Schweitzer points to no formal policy statement, he must demonstrate the City's liability by establishing a pattern of unconstitutional conduct, or that a final policymaker took a single unconstitutional action.

"A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

### 2. *Schweitzer Cannot Establish Any Constitutional Violation, Much Less* Monell *Liability*

As noted above, Schweitzer advances 26 "claims" in the Fourth Amended Complaint, but fails to delineate which City Defendant(s) he seeks to hold responsible for each claim. Certain claims—like conditions at the Galveston County Jail—obviously concern Galveston County and not the City.[14] Other claims—like

---

[14] To the extent Schweitzer seeks to hold the City responsible for the conditions at the Galveston County jail, he has not alleged any facts that would permit me to infer the City's *Monell* liability. All of Schweitzer's allegations about the jail's poor conditions concern Perez—a County Defendant—and unnamed deputies. There is no indication the City or any of its personnel are involved with Galveston County jail operations, much less that the final policymaker for the Galveston County jail is a City Defendant.

Schweitzer's First Amendment retaliation claims—fail for the reasons stated above. Still other "claims" are too conclusory to support liability, including:

- "Failure to intervene by numerous officers on multiple occasions." Dkt. 72 at 30.

- "Failure to Supervise by numerous officers on multiple occasions." *Id.*

- "Failure to supervise or protect from retaliation after Chief Hale and the entire city's leadership was warned of the potential for revenge and the absolutely specific way it would be carried out." *Id.* at 31.

Schweitzer does not specify the circumstances in which officers allegedly failed to intervene or supervise, or which officers failed to do so. Because Schweitzer cannot establish a constitutional violation relating to these claims, he certainly cannot establish a custom that would give rise to the City's liability. *See Watt v. New Orleans City*, 647 F. Supp. 3d 496, 501 (E.D. La. 2022), *aff'd*, No. 23-30050, 2023 WL 6807033 (5th Cir. Oct. 16, 2023) ("[C]ourts do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." (quotation omitted)).

Other claims by Schweitzer are disproved by his own allegations. For example, Schweitzer claims "[f]ailure to adequately train officers on how to properly handle class 'C' misdemeanors or traffic violations during a pandemic." Dkt. 72 at 32. Yet, Schweitzer also alleges "it was a well-known fact that the Galveston police department was not making arrests for Class 'C' Misdemeanors" and that "nobody else in the community was even being pulled over [for] such a small violation." *Id.* at 30. Thus, Schweitzer's own allegations establish that it was *not* the City's custom to make arrests or impose jail time for low-level offenses.

Similarly, Schweitzer alleges "Chief Hale . . . acknowledged an official policy of charging people for less serious crimes they did not commit in order to avoid charging people for more serious crimes," and that "Chief Hale was the official policymaker and he ratified the decision and rationale behind my arrest for [Schweitzer's] turn signal." Dkt. 72 at 31. I will assume, without deciding, that

while he was Chief of Police, Hale was the final policymaker for the City's law enforcement actions. As noted above, Schweitzer himself has admitted to failing to use his turn signal. *See id.* at 18 ("I agreed, took full responsibility for my actions and apologized."). More importantly, Schweitzer never alleges that he did, in fact, use his turn signal. Accordingly, even if the above allegations could give rise to a claim for a single unconstitutional action by a final policymaker for the City, Schweitzer would fail to state such a claim given his own acknowledgment that he failed to signal. *See Atwater*, 532 U.S. at 354.

As Schweitzer acknowledges at one point, most of the patterns and customs he alleges are "only directed at [himself]." Dkt. 72 at 31. For example, Schweitzer alleges the Galveston Police Department has a pattern of "unlawfully and involuntarily commit[ting] 'certain' people against their will and without any justification, warrant, or imminent threat." *Id.* at 32. Yet, Schweitzer identifies no one, other than himself, who was unlawfully and involuntarily committed. To plausibly "plead a practice so persistent and widespread as to practically have the force of law, [Schweitzer] must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (cleaned up).

In a similar case, a plaintiff sued the City of Burleson and two police officers for false arrest, excessive force, and failure to train after allegedly being falsely detained under the emergency detention procedures outlined in the Texas Health and Safety Code. In that case, the plaintiff's "evidence of a custom consist[ed] of fifty-five administrative complaints and twenty-seven Internal Affairs complaints lodged against the City of Burleson Police Department over the last ten years." *Clark*, 850 F. App'x at 207. The plaintiff averred that "discovery [would] produce . . . a sufficient number of stories like his own to demonstrate a pattern." *Id.* The Fifth Circuit found this insufficient, stating "a successful showing of such a pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."

*Id.* at 207–08 (cleaned up). The Fifth Circuit also found the plaintiff's allegations that "following his own arrests, he sought to file a criminal complaint against the arresting officers, to speak to the police chief, and to file a complaint with Internal Affairs, but he was frustrated at every turn" to be insufficient evidence of "a custom of permitting constitutional violations." *Id.* at 208.

> Although these allegations might evidence a culture that permits unprofessional conduct, they do not include any facts that would permit a court to infer an unconstitutional custom. They do not show that other complaints have been mishandled or other constitutional violations permitted. Even when combined with Clark's statistical claims, "I was treated unprofessionally" plus "eighty-two generic complaints" does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.

*Id.* Because Schweitzer pleads even less here than the plaintiff in *Clark*, I have no trouble finding that Schweitzer fails to allege a pattern of constitutional violations.

Because Schweitzer fails to allege a pattern of constitutional violations, it should come as no surprise that his supervisory claims for failure to train and failure to supervise also fail.

> To succeed on his claim of failure to train or supervise, [Schweitzer] must demonstrate that 1) the defendant failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of [his] rights; and 3) the failure to train or supervise constituted deliberate indifference to [his] constitutional rights.

*Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (cleaned up). Schweitzer's failure to train and supervise claims fails as to the second prong because, as discussed above, he has not shown a violation of his rights. His claims also fail as to the deliberate indifference prong. "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* (quotation omitted). The Fifth Circuit has "rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train." *Zarnow*, 614 F.3d at 170.

Schweitzer also alleges "[f]ailure to adequately train officers regarding their implicit bias towards people they have frequent contact with, the poor and homeless, or those they have a personal relationship with." Dkt. 72 at 32. Yet, Schweitzer fails to allege what implicit bias training officers receive, let alone why it is inadequate. Similarly, Schweitzer alleges "a pattern and practice of failing and refusing to follow city policy regarding the civilian review board." *Id.* at 31. But the Civilian Review Board is merely an advisory board that makes recommendations to the Chief of Police regarding instances of misconduct by officers that are under review. GALVESTON, TEX., CODE OF ORDINANCES ch. 2, art. IV, Div. 7, § 2-224 (2022). Moreover, Schweitzer makes no attempt to articulate what non-binding recommendations were not followed that caused the specific constitutional violations he alleges.

Similarly insufficient is Schweitzer's allegation that the "large number of reprimands for not finishing [Texas Commission of Law Enforcement] requirements in 2018 proves a system [with a] wide lack of emphasis and disregard for continuing education." Dkt. 72 at 32. That may be, but Schweitzer does nothing to connect the dots between a systemic failure to complete continuing education in 2018 and the specific constitutional violations he alleges in the Fourth Amended Complaint.

Finally, Schweitzer alleges officers are not adequately trained for mental health interventions based on Texas Commission of Law Enforcement requirements. *See id.* at 33. To support this claim, Schweitzer notes that "in January 2021, the Galveston Police department had 134 sworn officers, with none certified as Mental Health Peace Officers." *Id.* Even if this allegation evidences a lack of training, Schweitzer has not asserted that the City was deliberately indifferent in adopting its training policy or how the failure to certify officers as Mental Health Peace Officers caused the violations he alleges.

In short, Schweitzer fails to allege any constitutional violation for which the City could be liable. Even if Schweitzer had alleged a constitutional violation, he has not alleged a custom for which the City would be liable under *Monell*.

### 3.   *Judge Schweitzer*

Before concluding, I would be remiss not to mention Schweitzer's allegations concerning his father, Judge Schweitzer. Schweitzer alleges Judge Schweitzer directed his July 28, 2020 arrest; aided in writing the police report for the July 28, 2020 arrest; and presided over Schweitzer's appearance in court to answer for the July 28, 2020 arrest. *See id.* at 18–19, 23. Schweitzer also alleges his father presided over "several court appearances" related to Schweitzer's March 23, 2022 disorderly conduct arrest. *See id.* at 27.

If true, this conduct was plainly inappropriate. *See* TEX. R. CIV. P. 18b(a)(3) ("A judge must disqualify in any proceeding in which . . . either of the parties may be related to the judge by affinity or consanguinity within the third degree."); TEX. R. CIV. P. 18b(b)(2), (b)(7)(A) ("A judge must recuse in any proceeding in which . . . the judge has a personal bias or prejudice concerning the subject matter or a party" or "a person within the third degree of relationship to [the judge] . . . is a party to the proceeding.").

Even so, this court may not exercise jurisdiction over whatever claims might arise from these allegations, because to hear such claims "would constitute impermissible collateral attacks on a state court conviction" under the *Rooker-Feldman* doctrine. *Burditt v. Leedy*, No. H-13-1070, 2014 WL 2624926, at *3 (S.D. Tex. June 12, 2014). "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994). Thus, the proper course was an appeal, not a civil rights action. *See Seaton v. Dir., Smith Cnty. Prob.*, No. 6:17-cv-36, 2018 WL 2440474, at *3 (E.D. Tex. May 31, 2018) ("In Texas, the initial direct appeal from a conviction for a Class C misdemeanor in municipal court is to the County Court at Law."); *see also* TEX. CRIM. PROC. CODE ANN. art. 4.08 ("The county courts

shall have appellate jurisdiction in criminal cases of which justice courts and other inferior courts have original jurisdiction."); *id.* art. 45.042(a) ("Appeals from a justice or municipal court . . . shall be heard by the county court.").

## H. LEAVE TO AMEND

There is one last issue I must address. Schweitzer asks to amend his complaint if any part of Defendants' motions are granted. Schweitzer has already had five opportunities to state a claim. He filed an original complaint on July 29, 2022; an amended complaint on December 12, 2022; a second amended complaint on March 1, 2023; a third amended complaint on April 4, 2023; and a fourth amended complaint on April 28, 2023. Schweitzer does not identify what additional facts he would allege if permitted to amend. "Because [Schweitzer] has failed to explain what facts would be included in yet another amended pleading, his latest request to amend should be denied." *Benjamin v. Bank of N.Y. Mellon*, No. 4:20-cv-00214, 2021 WL 672344, at *2 (S.D. Tex. Feb. 22, 2021).

## CONCLUSION

For the reasons explained above, I recommend County Defendants' Motion to Dismiss (Dkt. 74) be **DENIED** as to Schweitzer's Fourteenth Amendment conditions of confinement claim against Galveston County, but **GRANTED** as to all other claims against County Defendants. I recommend the Motions to Dismiss filed by Healthcare Defendants, White, and City Defendants (Dkts. 79, 80, 82) be **GRANTED** in their entirety.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 14th day of March 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE